UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

```
┌─────────────────────────────┐
│          FILED              │
│                             │
│       MAR 28 2008           │
│                             │
│  CLERK, U.S. DISTRICT COURT │
│        NORFOLK, VA          │
└─────────────────────────────┘
```

TERRY TYRONE MOORE, #325480,

        Petitioner,

v.                          CIVIL ACTION NO. 2:07cv441

GENE M. JOHNSON, Director of the
Virginia Department of Corrections,

        Respondent.

## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter was initiated by petition for a writ of habeas corpus under 28 U.S.C. § 2254. The matter was referred to the undersigned United States Magistrate Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C), Rule 72(b) of the Federal Rules of Civil Procedure, and Rule 72 of the Local Civil Rules of the United States District Court for the Eastern District of Virginia. For the reasons stated herein, the Court recommends that the instant petition for a writ of habeas corpus be DENIED.

### I. STATEMENT OF THE CASE

#### A. Background

On October 10, 2002, Petitioner, Terry Tyrone Moore ("Moore"), was found guilty in a jury trial,[1] in the Circuit Court for the City of Hampton, Virginia ("Circuit Court"), of one (1) count of attempted maiming; one (1) count of attempted robbery; one (1)

---

[1] Moore was represented at trial and on appeal by Sterling H. Weaver, Esq. ("Weaver").

count of use of a firearm in the commission of attempted robbery;

two (2) counts of use of a firearm in the commission of a felony;

and one (1) count of conspiracy to commit felonies.[2]  Moore was

sentenced to serve a total of twenty-three (23) years in prison, as

reflected in the Court's Sentencing Order entered on January 29,

2003.

On April 15, 2003, Moore noted his appeal to the Court of

Appeals of Virginia ("Court of Appeals"), and on May 29, 2003, he

filed his petition for appeal.[3]  On August 29, 2003, the Court of

Appeals refused the petition for appeal.[4]  Record No. 0981-03-1

---

[2]Moore was sentenced to a term of seven (7) years for attempted maiming; a term of seven (7) years for attempted robbery; a term of three (3) years for the first count of use of a firearm; a term of five (5) years for the second count of use of a firearm; and a term of twelve (12) months for conspiracy to commit felonies.

[3]This appeal alleged essentially the following errors:
    (I) The trial court erred by joining the conspiracy count with the other charges against Moore at trial;
    (II) The trial court erred in refusing to grant Moore's motion for mistrial after a witness mentioned Moore's uncharged criminal conduct;
    (III) The trial court erred in refusing to allow Moore to question a witness about charges dismissed pursuant to said witness's plea agreement;
    (IV) The trial court erred in refusing to grant a mistrial after the jury had been given a verdict form charging attempted conspiracy and the jury had rendered a verdict convicting Moore of attempted conspiracy;
    (V) The trial court erred in denying Moore's request for a bill of particulars; and
    (VI) The trial court erred in refusing to set aside the verdicts as being contrary to the law and the evidence.

[4]In a one-judge decision, the court held:
    (I) The court did not err in joining the conspiracy charge with the other charges because the charged offenses met the statutory requirement that the offenses be part of a "common scheme

("Moore I").  On September 15, 2003, Moore filed a request for review by a three-judge panel.  The three-judge panel deliberated on January 13, 2004, and on January 30, 2004, the panel awarded an appeal limited to the issue of whether the trial court erred in refusing to allow the defense to question a victim (Martin Jennings) about charges dismissed in his federal plea agreement (error (III)); the panel denied the appeal on the remaining five (5) issues.  Ultimately, on July 13, 2004, that panel rendered an opinion affirming the convictions, finding that the trial court erred in limiting cross-examination as set forth in Moore's error (III), but that the exclusion of the resulting evidence was harmless.

---

or plan" and justice did not require separate trials;

(II) The court did not err in denying the motion for mistrial because the court gave a prompt curative instruction to the challenged portion of the testimony, and the record does not indicate the jury failed to follow the instruction;

(III) The litigant's right to impeach the credibility of adverse witnesses is limited to questions about convictions, so the court did not err in excluding questions about unadjudicated crimes that were dismissed pursuant to the plea agreement;

(IV) The court did not err in denying the motion for mistrial because the scrivener's error regarding the insertion of the word "attempted" on the jury verdict form was discovered before the jury was dismissed, the jury was properly instructed before and after the error was discovered, and the jury was given additional time to deliberate on the corrected charge and corresponding sentence;

(V) The court did not err in denying Moore's motion for a bill of particulars because Moore's counsel conceded that the Commonwealth had provided the information covered under the bill of particulars, and the Court of Appeals was barred from considering the error on appeal pursuant to Va. Sup. Ct. R. 5A:18 because the error was not presented to the trial court; and

(VI) The Court of Appeals did not need to address this error because it was not fully developed in Moore's brief.

3

On August 16, 2004, Moore filed his petition for appeal with the Supreme Court of Virginia.[5]  On January 4, 2005, the court summarily refused the appeal.  Record No. 041896 ("Moore II").  On January 19, 2005, Moore filed a petition for rehearing, which was denied on March 16, 2005.

Moore subsequently filed a petition for writ of certiorari with the United States Supreme Court, which the Court summarily denied on October 3, 2005.  Record No. 04-1691.

On March 7, 2006, Moore filed a petition for a writ of habeas corpus in the Circuit Court.[6]  On October 24, 2006, the court denied and dismissed the petition.[7]  Record No. 06-661 ("Moore

---

[5]This appeal alleged essentially the same claims that were presented to the Court of Appeals.

[6]This petition alleged essentially the following claims:
(A) Moore was denied his constitutional right to a fair trial as a result of adverse publicity;
(B) Moore was denied his right to effective assistance of counsel due to defense counsel's failure to move for a change of venue or to seek other safeguards to assure trial by an impartial jury;
(C) Moore was denied his right to effective assistance of counsel due to defense counsel's failure to voir dire potential jurors as to the possible impact of adverse pretrial publicity or any other potentially disqualifying factors;
(D) Moore was denied his right to due process because he was not provided with all inconsistent statements made pretrial by a government witness, Keith Davis ("Davis"), as required by Brady v. Maryland, 373 U.S. 83, 87 (1963); and
(E) Moore was denied effective assistance of counsel due to counsel's failure to move for a mistrial or for the exclusion of Davis's testimony to remedy the Commonwealth's failure to provide all exculpatory impeachment evidence.

[7]The court essentially held:
Claims (A) and (D) lacked merit and were procedurally defaulted pursuant to Slayton v. Parrigan, 215 Va. 27 (1974),

4

III"). On January 23, 2007, Moore filed a petition for appeal of his state habeas corpus petition in the Supreme Court of Virginia, which the court summarily refused on May 25, 2007. Record No. 070177 ("Moore IV"). On June 8, 2007, Moore filed a petition for rehearing, which was denied on September 25, 2007.

On or before September 28, 2007, while in the custody of the Virginia Department of Corrections at the Keen Mountain Correctional Center, Moore executed the instant federal petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Federal Petition"), accompanied by a supporting memorandum ("Moore's Memorandum"), and the $5.00 filing fee.[8] The Court received and filed this petition on September 28, 2007. On October 31, 2007, Respondent filed his Rule 5 Answer and Motion to Dismiss accompanied by a supporting brief ("Respondent's Brief"). Moore did not file a response to Respondent's Brief.

---

because they could have been raised at trial or on appeal, but were not; and

Moore could not prevail on claims (B), (C), and (E) because he did not show that counsel's performance was deficient nor that he was prejudiced thereby, pursuant to Strickland v. Washington, 466 U.S. 668 (1984).

[8]This petition was signed by Moore's counsel, J. Barry McCracken, Esq., but was not dated or signed by Moore. The Court notes that the United States Supreme Court promulgated certain amendments to the Rules Governing Section 2254 Cases in the United States District Courts, which became effective on December 1, 2004. As amended, Rule 3(d) adopts the prison mailbox rule with regard to § 2254 petitions. Accordingly, the Court recognizes the prison mailbox rule for federal habeas petitions mailed by the prisoner. Because the petition in this case was filed by counsel, the filing date for purposes of the statute of limitations is the date the petition was received by the court, September 28, 2007.

## B. Grounds Alleged

Moore now asserts in this Court that he is entitled to relief under 28 U.S.C. § 2254 for the reasons substantially as follows:

(1)   Denial of Moore's Sixth and Fourteenth Amendment rights to a fair trial as a result of adverse pretrial publicity;[9]

(2)   Denial of Moore's Sixth and Fourteenth Amendment rights to effective assistance of counsel in that defense counsel failed to move for a change of venue or to seek other safeguards to assure trial by an impartial jury in the face of "overwhelming" pretrial publicity;

(3)   Denial of Moore's Sixth and Fourteenth Amendment rights to effective assistance of counsel in that defense counsel failed to voir dire potential jurors as to the possible impact of adverse publicity or any other potentially disqualifying factors;

(4)   Denial of Moore's Fourteenth Amendment right to due process because he was not provided with all pretrial inconsistent statements made by Davis to which Moore was entitled; and

(5)   Denial of Moore's Sixth and Fourteenth Amendment rights to effective assistance of counsel in that defense counsel elected to forego seeking a mistrial or the exclusion of testimony when defense counsel learned that the prosecutor had not

---

[9]The Court notes that claims (2) and (3) also assert denial of Moore's right to a fair trial as a result of adverse publicity. Because such a claim is fully addressed in claim (1), and cannot be reviewed on the merits by this Court, see infra, the Court has construed claims (2) and (3) to only raise ineffective-assistance-of-counsel grounds directed to the same substantive issue. The Court notes that the Circuit Court apparently applied the same construction for Moore's claims. Moore III, at 4. The Court notes further that any negative impact on Moore's right to a fair trial would still be considered as support for the prejudice prong of the two-prong ineffective-assistance-of-counsel standard, see infra, Section III.C.1.

provided exculpatory impeachment evidence related to Davis.

## II. <u>PETITIONER'S MOTION FOR AN EVIDENTIARY HEARING</u>

As a preliminary matter, the Court considers Moore's motion for an evidentiary hearing. Moore's Memorandum, at 26. The Court has determined that an evidentiary hearing is not required, as purely legal issues are presented and the record before the Court adequately resolves the legal issues raised. <u>See</u> Rule 8 of the Rules Governing Section 2254 Cases. Accordingly, the Court DENIES Moore's motion for an evidentiary hearing.

## III. <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

The Court FINDS that all of Moore's claims are exhausted, but claims (1) and (4) are also procedurally defaulted before this Court. The Court therefore FINDS that only Moore's claims (2), (3), and (5) are properly exhausted, requiring review on the merits.[10]

---

[10]Though Respondent has not asserted the statute of limitations as an affirmative defense, the Court considers here the timeliness of Moore's Federal Petition. <u>See</u> <u>Day v. McDonough</u>, 547 U.S. 198, 126 S. Ct. 1675, 1684 (2006) (federal habeas courts are "permitted, but not obligated, to consider <u>sua sponte</u>, the timeliness of a state prisoner's habeas petition"). Moore's conviction did not become final until October 3, 2005, the date upon which the United States Supreme Court denied Moore's petition for a writ of certiorari. Accordingly, Moore had a one (1) year statute of limitations from that date, or until October 3, 2006, in which to file his petition with this Court. 28 U.S.C. § 2244(d)(1).

A person in state custody, however, may toll the running of the limitation period during the time in which a properly filed application for state post-conviction or other collateral proceedings remains pending. 28 U.S.C. § 2244(d)(2). Such an application remains pending throughout the state review process,

### A. __Exhaustion__

In order for this Court to address the merits of this habeas petition, Moore's claims must be exhausted. See 28 U.S.C. § 2264(a); 28 U.S.C. § 2254(b). The exhaustion requirement is satisfied when "allegations advanced in federal court . . . [are] the same as those advanced at least once to the highest state court." Pruett v. Thompson, 771 F. Supp. 1428, 1436 (E.D. Va. 1991), aff'd 996 F.2d 1560 (4th Cir. 1993). Exhaustion may be accomplished either on direct appeal or in post-conviction proceedings. See O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999) (citing Brown v. Allen, 344 U.S. 443, 447 (1953)); see also Skipper v. French, 130 F.3d 603, 610 n.4 (4th Cir. 1997). In order for a claim to be considered exhausted, it must be "fairly presented to

---

including the time period between a lower state court's decision and the filing of a notice of appeal to a higher state court. Carey v. Saffold, 536 U.S. 214, 220-21 (2002); Rouse v. Lee, 339 F.3d 238, 243-44 (4th Cir. 2003) (a state post-conviction proceeding for § 2244(d)(2) tolling purposes encompasses all state-court proceedings "from initial filing [in the trial court] to final disposition by the highest state court." (quoting Taylor v. Lee, 186 F.3d 557, 561 (4th Cir. 1999))).

In the instant case, the record reflects that Moore's state habeas petition was properly filed with the Circuit Court within the meaning of § 2244(d)(2), and the appeal of that petition was also properly filed. Thus, Moore was entitled to tolling from March 7, 2006, the date on which he filed his state habeas petition with the Circuit Court, until September 25, 2007, the date on which the Supreme Court of Virginia denied Moore's request for a rehearing of his appeal, or a total of 567 days. Such tolling extended Moore's original deadline for filing the instant petition from October 3, 2006, until April 21, 2008. Therefore, Moore's petition, filed on September 28, 2007, see supra note 8, was timely.

the state courts," which means "that both the operative facts and the controlling legal principles must be presented to the state court." Matthews v. Evatt, 105 F.3d 907, 910-11 (4th Cir. 1997) (internal quotations omitted). "[T]he exhaustion requirement for claims not fairly presented to the state's highest court is technically met when . . . a state procedural rule would bar consideration if the claim was later presented to the state court," Matthews, 105 F.3d at 911 (citations omitted); such claims are treated as procedurally defaulted and barred from this Court's review. Clagett v. Angelone, 209 F.3d 370, 378-79 (4th Cir. 2000). Further, if any of Moore's claims were presented to the highest state court, but were not addressed on the merits because they were procedurally barred in state court pursuant to an adequate and independent state procedural rule, the claims are exhausted, but the procedural default prevents federal habeas review of the merits. Coleman v. Thompson, 501 U.S. 722, 750 (1991).

Respondent has asserted that all of Moore's claims are exhausted because they either were presented to the Supreme Court of Virginia in Moore's state habeas petition, but that claims (1) and (4) are procedurally defaulted in this court because they were barred from state court review pursuant to Slayton. Respondent's Brief, at 4-5, 7-8 (citing Slayton, 215 Va. 27 (claims that could have been raised at trial or on direct appeal, but were not, and do not concern jurisdictional issues or ineffective assistance of

counsel, cannot be addressed in habeas corpus)). This Court concurs.

The Circuit Court denied these claims pursuant to <u>Slayton</u>, <u>Moore III</u>, at 2-3, which has consistently been held to constitute such an independent-and-adequate state-law ground so as to support procedural default in federal court. <u>Smith v. Murray</u>, 477 U.S. 527, 533 (1986); <u>Wright v. Angelone</u>, 151 F.3d 151, 159-60 (4th Cir. 1998). The Supreme Court of Virginia then summarily denied Moore's appeal, which contained those claims. <u>Moore IV</u>, at 1. The United States Supreme Court has specified that "where . . . the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits." <u>Ylst</u> <u>v. Nunnemaker</u>, 501 U.S. 797, 803 (1991). Accordingly, the Court construes the Supreme Court of Virginia's dismissal of Moore's state habeas appeal, <u>Moore IV</u>, as relying on the same procedural bar relied on by the Circuit Court, <u>Moore III</u>, at 2-3.

Based on the foregoing, the Court FINDS that all of Moore's claims are exhausted, but the Court further FINDS that claims (1) and (4) were procedurally defaulted under Virginia law and are therefore barred from this Court's review.[11] Thus, this Court will

---

[11]Although most of Moore's claims are procedurally defaulted, he may still obtain review of those claims if he can establish either: (1) cause for the default and actual prejudice as a result of the alleged violation of federal law, or (2) that failure to consider the claim will result in a fundamental miscarriage of justice because he is actually innocent of the crime for which he

only address claims (2), (3), and (5) on the merits.

**B.  <u>Merits</u>**

The Court now considers claims (2), (3), and (5) on the merits.  A federal court may not grant relief on a habeas claim previously adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d).  In drafting this statute, Congress "plainly sought to ensure a level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way."  <u>Williams v. Taylor</u>, 529 U.S. 362, 386 (2000).  <u>See also</u> <u>Bell</u>, 236 F.3d at 157 (recognizing that, for claims adjudicated on the merits by the state court, the federal court "is limited by the deferential standard of review set forth in § 2254(d), as interpreted by the Supreme Court in <u>Williams</u>[].").  Consequently, "state-court judgments must be upheld unless, after the closest examination of

---

was convicted.  <u>Clagett</u>, 209 F.3d at 379 (citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991)); <u>Weeks v. Angelone</u>, 176 F.3d 249, 269 (4th Cir. 1999).  The Court notes that Moore has not attempted to raise any of these exceptions.

the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." Williams, 529 U.S. at 387. Moreover, "[a] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be [objectively] unreasonable." Id. at 411. In deference to the state court's decision, this Court may not grant relief unless it determines that decision on the merits was "legally or factually unreasonable." See Bell v. Jarvis, 236 F.3d 149, 163 (4th Cir. 2000) (quoting Aycox v. Lytle, 196 F.3d 1174, 1178 (10th Cir. 1999)). Further, the Court is mindful that "a determination on a factual issue by a State court shall be presumed correct [in a habeas proceeding]," and the burden is on a petitioner to rebut that "presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(d)(2); see also Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir. 2003), cert. denied, 541 U.S. 1032 (2004). Because the Supreme Court of Virginia summarily dismissed Moore's claims, it must be presumed that the Supreme Court of Virginia dismissed Moore's claims for the same reasons as the Circuit Court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). Accordingly, in addressing Moore's claims, this Court must "look through" the Supreme Court of Virginia's decision to that of the Circuit Court. Id.

## 1. <u>Ineffective Assistance of Counsel Standard</u>

All of Moore's properly exhausted claims assert ineffective assistance of counsel.  The controlling standard for such claims, is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  As such, to grant Moore relief on his claims, this Court must find that the state court's dismissal of such claims involved an unreasonable application of <u>Strickland</u>.  Under <u>Strickland</u>, the state court was required to subject Moore's claim to a two-prong test in which the petitioner must prove both ineffective assistance (incompetence) and prejudice.  <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 381 (1986).  To grant relief, the state court had to find: (1) Moore's lawyer's performance fell below the range of competence demanded of lawyers in criminal cases, <u>Strickland</u>, 466 U.S. at 690; and (2) there is a reasonable probability that, but for the deficient performance by counsel, the ultimate result would have been different, <u>id.</u> at 694.

When assessing counsel's performance under <u>Strickland</u>'s first prong, the Supreme Court has stressed that the constitutional guarantee of effective assistance of counsel seeks only to "ensure that criminal defendants receive a fair trial," and not to "improve the quality of legal representation." <u>Id.</u> at 689.  The reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id.</u>  In order to prevail, a petitioner "must overcome the

13

presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). Accordingly, the reviewing court must grant a "heavy measure of deference to counsel's judgments," and, in doing so, may only evaluate such performance from counsel's perspective at the time of the alleged error and in light of all the circumstances. Id. at 690-91; Kimmelman, 477 U.S. at 381. Additionally, a reviewing court generally should assess counsel's overall performance throughout the case, Kimmelman, 477 U.S. at 386, and avoid "Monday morning quarterbacking." Stamper v. Muncie, 944 F.2d 170, 178 (4th Cir. 1991); see also Strickland, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight . . . .").

The second prong of the Strickland analysis presents an equally rigorous standard. To affirmatively prove prejudice, a petitioner must do more than merely demonstrate that his attorney's error had "some conceivable effect" on the outcome of the case. Strickland, 466 U.S. at 693. Rather, the petitioner must demonstrate "a reasonable probability[12] that, but for counsel's unprofessional errors, the result of the proceeding would have been

---

[12]The Court notes that this standard is not so high as to require that a petitioner "show that counsel's deficient conduct more likely than not altered the outcome in the case." Strickland, 466 U.S. at 693-94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

different." Id. at 694.   As with the first prong, the reviewing
court must consider the totality of the evidence before it in
conducting the prejudice inquiry.   Id. at 695.

Additionally, a reviewing court need not consider the two
prongs of the Strickland analysis in sequential order.   Strickland,
466 U.S. at 697.   The court need not even address both prongs if
the petitioner fails to make a sufficient showing on one.   Id.
When evaluating an ineffective assistance of counsel claim, a court
should first apply whichever prong more quickly disposes of the
respective claim.   See id.

## 2.  Claim (2)

As claim (2), Moore asserts he was denied his right to
effective assistance of counsel because defense counsel failed to
move for a change of venue or to seek other safeguards to assure
trial by an impartial jury in the face of "overwhelming" pretrial
publicity.  Federal Petition, at 8.   This claim was considered on
the merits by the Circuit Court, which held that "[t]he record
shows counsel had no reason to think a change in venue was
warranted . . . or that the jurors could not be fair and impartial.
Where counsel had no basis for taking an action, counsel's
performance is not deficient for failing to do so."  Moore III, at
4.  In support of his claim in the instant petition, Moore asserts
that "[a] change of venue is required whenever there is
'widespread' prejudice against a defendant and that such prejudice

15

would, with reasonable certainty, prevent a fair trial." Moore's

Memorandum, at 14.   In addition to relying on federal case law,

Moore has cited Virginia law as support for this claim.[13]   This

_____

[13]The Court notes that the Virginia cases cited by Moore
pertain generally to the effects of pre-trial publicity on changes
of venue and jury voir dire, raised herein as claims (2) and (3),
respectively.     Such cases are predicated on the long-standing
presumption under Virginia law "that a defendant can receive a fair
trial in the locality where the offense occurred, and the burden is
on the accused to overcome that presumption by clearly
demonstrating widespread prejudice against him," LaVasseur v.
Commonwealth, 225 Va. 564, 577 (1983), and the requirement that the
accused demonstrate any such prejudice would, with reasonable
certainty, prevent a fair trial, Mueller v. Commonwealth, 244 Va.
386, 398 (1992).   In the majority of the cases cited by Moore, the
accused had failed to overcome the LaVasseur presumption or to
demonstrate the lack of a fair trial, thus there was no error in
the trial court's denial of a change of venue. See, e.g., Chandler
v. Commonwealth, 249 Va. 270, 275 (1995) (finding no error in
denying change of venue based on pre-trial publicity from three
newspaper articles containing statements from the Commonwealth's
attorney that were not alleged to be inaccurate and that resulted
in only two of 60 veniremen excused for cause); George v.
Commonwealth, 242 Va. 264, 274 (1991) (finding no error in denying
change of venue based on pre-trial publicity from newspaper
articles and finding twenty-percent jury-veniremen disqualification
rate was "surprisingly low" considering the "shocking nature" of
the charged offenses); Mueller, 244 Va. at 398 (finding no error in
denying change of venue based on pre-trial publicity from
television reports and newspaper articles and editorials that were
not alleged to be inaccurate and that resulted in only nine of 47
veniremen excused for cause); Brown v. Commonwealth, 28 Va. App.
315, 336 (1998) (finding no error in denying change of venue based
on media reports that resulted in only 22 of 60 veniremen excused
for cause due to pre-trial publicity and considering broad latitude
afforded counsel during jury dire); Proctor v. Commonwealth, 40 Va.
App. 233, 248-50 (2003) (finding no error in denying change of
venue based on pre-trial publicity from numerous newspaper articles
that were not alleged to be inaccurate and where trial court
clearly considered "the relative ease" in jury selection during
which only 3 of 27 veniremen excused for cause); LaVasseur, 225 Va.
at 577-78 (finding no error in denying change of venue based on
pre-trial publicity from 16 newspaper articles that merely reported
the facts, "which [were] shocking in themselves," but not

16

Court cannot consider allegations that the state court misapplied

state law. <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991) ("[I]t is

---

inflammatory, and that did not result in the disqualification of any veniremen for cause).

Moore did cite a Virginia case, <u>Thomas v. Commonwealth</u>, where the trial court was found to have erred in denying a change of venue for failure to consider the proper test and apply the relevant factors, not solely because of the "extensive" volume and nature of pre-trial publicity, which included 111 newspaper articles and 188 television reports – the majority of which aired in the two months prior to the trial date – that were factually inaccurate in certain respects and "went beyond dispassionate reporting of the events . . . ."   263 Va. 216, 231-33 (2002) (finding trial court error in denying change of venue for failure to consider the ease of impaneling a jury as opposed to the ultimate result of the jury-selection process, which took five days of <u>voir dire</u> and resulted in 73 of 100 veniremen being excused for multiple causes, including the impact of the pre-trial publicity). Moore also cited cases where the trial court erred during jury selection, <u>Griffin v. Commonwealth</u>, 19 Va. App. 619, 621 (1995) (finding no error in denying change of venue based on pre-trial publicity, but finding trial court error for forcing defendant to use a peremptory challenge to strike a juror whose answers during <u>voir dire</u> indicated his misconception that the defendant must prove his innocence); <u>Breeden v. Commonwealth</u>, 217 Va. 297, 300 (1976) (finding trial court error for forcing defendant to use a peremptory challenge to strike a juror whose answers during <u>voir dire</u> indicated his misconception that the defendant must prove his innocence); <u>Justus v. Commonwealth</u>, 220 Va. 971, 976 (1980) (finding trial court error for forcing defendant to use a peremptory challenge to strike a juror whose answers during <u>voir dire</u> indicated that newspaper, television and radio reports had led her to form a belief as to the defendant's guilt).   Moore further cited Va. Code Ann. § 8.01-358, which was amended in 1981 to give counsel the right to participate in certain aspects of jury <u>voir dire</u>, <u>e.g.</u>, to propound any relevant question to ascertain whether the juror has expressed or formed an opinion and/or has any bias prejudice.  However, none of the state-law authority cited by Moore bears directly on whether counsel was ineffective for failing to request a change of venue or to conduct additional jury <u>voir dire</u> due to concerns over pre-trial publicity in the instant case. Therefore, to the extent the Court addresses the substance of those federal cases cited by Moore, <u>infra</u>, that pertain to the issues of pre-trial publicity on changes of venue and jury <u>voir dire</u>, Moore's arguments have been considered here.

not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Therefore, this Court will not consider the authority Moore cited to the extent it relies upon the application of state law in determining whether the Circuit Court unreasonably applied <u>federal</u> law in dismissing Moore's petition. <u>Williams</u>, 529 U.S. at 386.

Although Moore has provided several federal cases in support of his claim that defense counsel was ineffective for failing to request a change of venue, Moore has provided no cases that set forth a specific standard for when counsel must make such a motion or be deemed constitutionally ineffective. The cases cited by Moore establish when the court's failure to grant such a motion denied the defendant his right to a fair trial.[14] The denial of that right would be evidence of prejudice, the second <u>Strickland</u> prong, but to establish constitutionally ineffective assistance of counsel, Moore would also have to establish that any such prejudice was caused by counsel's ineffectiveness.

Moore first cites <u>Irvin v. Dowd</u>, 366 U.S. 717, 725-29 (1961), for the proposition that "<u>no one</u> who had been exposed to the inflammatory media reports could possibly have fairly judged his case." Moore's Memorandum, at 15. In <u>Irvin</u>, there was evidence of

---

[14]Moore has asserted, as claim (1), that he was denied his right to a fair trial on this basis; however, the Court, having found that claim to be procedurally defaulted, will not consider it on the merits.

"a barrage" of publicity for the period of six (6) to seven (7) months before the trial, including "extensive newscasts" covering the defendant's background, offered plea agreement, and confession. Irvin, 366 U.S. at 725-26. The reporting also included "curbside opinions . . . as to what punishment [the petitioner] should receive . . . solicited and recorded . . . by a roving reporter [for] later . . . broadcast over the local stations." Id. at 725. As to the impact on the jury, the record showed that "370 prospective jurors or almost 90% of those examined on the point . . . entertained some opinion as to guilt." Id. at 727. As evidence of the publicity in his case, Moore has only provided articles from a local newspaper, the Daily Press, only six (6) of which were printed in 2002 before the trial commenced.[15] Although the articles reported that police "believed" Moore had committed at least three (3) murders, and included statements from family members of the alleged victims, the Court disagrees with Moore's characterization of the articles as "biased and written in a manner as to be inflammatory." See Moore's Memorandum, at 15. Further,

---

[15]One (1) article from January, 2002, addressing a widespread problem in witnesses refusing to testify, included three (3) sentences stating that police believe Moore murdered a man expected to testify against him. Four (4) articles from April to May, 2002, provided daily coverage of Moore's trial, resulting in acquittal, for a murder charge. As for the instant charges, Moore provided one (1) article from September, 2002, that was printed in advance of his trial, which surveyed Moore's prior charges and acquittals. Moore also provided articles dated October 10 and 11, 2002, which reported on the trial itself, and, therefore, do not constitute pretrial publicity.

all of the jurors were questioned during <u>voir dire</u> as to whether they acquired information about the accused from the news media, and each answered in the negative.[16]  Trial Transcript, at 19-20. Consequently, Moore has not established the "inflammatory barrage" of reporting and resulting risk of juror panel bias that necessitated a change of venue in <u>Irvin</u> to preserve that defendant's right to a fair trial.

Moore next cites <u>Rideau v. Louisiana</u>, 373 U.S. 723, 726-27 (1963), for the proposition that community prejudice may be presumed and mandate a change in venue when a local television station has broadcast the defendant's filmed confession over three (3) consecutive days.  Moore's Memorandum, at 15.  Here, <u>Rideau</u> is distinguishable insofar as Moore has not provided any evidence of comparable television exposure for his case, nor has he even demonstrated that articles about the instant trial were published for three (3) consecutive days.  Additionally, the Court in <u>Rideau</u> noted that three (3) members of the jury had admitted viewing the filmed confession and two (2) members of the jury were deputy sheriffs from the same parish as the sheriff who obtained the confession.  <u>Rideau</u>, 373 U.S. at 725.  Consequently, Moore has not provided facts demonstrating the same risk of juror panel bias that

---

[16]As support for claim (3), Moore has asserted that there was insufficient <u>voir dire</u> to establish this fact.  The Court finds <u>infra</u> that defense counsel was not ineffective in failing to request additional <u>voir dire</u> on this issue.

necessitated a change in venue in Rideau.

Finally, Moore cites Sheppard v. Maxwell, 384 U.S. 333, 362 (1966), for the proposition that, "Given the pervasiveness of modern communication and the difficulty of effacing prejudicial publicity from the minds of the jurors, the trial court must take strong measures to ensure the balance is never weighed against the accused." Moore's Memorandum, at 15-16. In Sheppard, the Court went on to say that, "[W]here there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the judge should continue the case until the threat abates, or transfer it to another county not so permeated with publicity." Sheppard, 384 U.S. at 363. Although the Court did not make a finding that the trial judge should have granted defense counsel's motion for change of venue, the Court did note that "[e]very juror, except one, testified at voir dire to reading about the case . . . or having heard broadcasts about it." Id. at 345. Further, prior to trial, the names and addresses of all of the veniremen were published in three (3) newspapers, resulting in prospective jurors receiving telephone calls and letters from friends and anonymous senders. Id. at 342. As stated, supra, none of the prospective jurors in Moore's case reported having knowledge of the case during voir dire, Trial Transcript, at 20, and Moore has not claimed that the prospective jurors were publicly identified prior to his trial. Consequently, Moore has not provided facts demonstrating the same

21

risk of juror panel bias that necessitated the Court's discussion of a change in venue in <u>Sheppard</u>.

Based on the foregoing, this Court FINDS that Moore has failed to show either that the Circuit Court unreasonably determined the facts or unreasonably applied federal law in dismissing claim (2). As such, this Court RECOMMENDS that claim (2) be DENIED.

### 3.  Claim (3)

As claim (3), Moore asserts he was denied his right to effective assistance of counsel because defense counsel failed to <u>voir dire</u> potential jurors as to the possible impact of adverse publicity or any other potentially disqualifying factors. Federal Petition, at 9.  This claim was considered on the merits by the Circuit Court, which held that "[t]he record shows counsel had no reason to think . . . that additional questions on <u>voir dire</u> were necessary, or that the jurors could not be fair and impartial. Where counsel had no basis for taking an action, counsel's performance is not deficient for failing to do so."  <u>Moore III</u>, at 4 (underlining added).  Further, Moore did not establish prejudice "because he has not shown the attitudes of any of the jurors precluded their giving him a fair trial."  <u>Id.</u>  In support of his claim in the instant petition, Moore asserts that the trial court's <u>voir dire</u> was not "adequate," and, therefore, counsel was required to conduct a "meaningful examination during jury selection." Moore's Memorandum, at 16.  As he did for claim (2), <u>supra</u>, Moore

has provided both federal case law and Virginia law as support for this claim.[17] This Court cannot consider allegations that the state court misapplied state law. <u>Estelle</u>, 502 U.S. at 67-68. Accordingly, this Court will not consider the authority Moore cited to the extent it relies upon the application of state law in determining whether the Circuit Court unreasonably applied <u>federal</u> law in dismissing Moore's petition. <u>Williams</u>, 529 U.S. at 386.

As with Moore's claim that defense counsel was ineffective for failing to request a change of venue, Moore has provided no cases that set forth a specific standard for when counsel must supplement the court's <u>voir dire</u> or be deemed constitutionally ineffective. The cases cited by Moore establish when <u>voir dire</u> was so insufficient as to deny the defendant his right to a fair trial by an impartial jury.[18] The denial of that right would be evidence of prejudice, the second <u>Strickland</u> prong, but to establish constitutionally ineffective assistance of counsel, Moore would also have to establish that any such prejudice was caused by counsel's ineffectiveness.

---

[17]Insofar as Moore presented essentially the same arguments and case law authority in support of claims (2) and (3), <u>see supra</u> note 13, the Court has already considered the Virginia statutory and case law authority to the extent appropriate in this federal habeas petition.

[18]Moore has asserted, as claim (1), that he was denied his right to a fair trial on this basis; however, the Court, having found that claim to be procedurally defaulted, <u>supra</u>, will not consider it on the merits.

Moore first cites <u>Nebraska Press Assn. v. Stuart</u>, 427 U.S. 539, 564 (1976), for the proposition that when there is "adverse pretrial publicity, the trial court should undertake 'searching questioning of potential jurors . . . to screen out those with fixed opinions as to guilt or innocence.'" Moore's Memorandum, at 16. In <u>Stuart</u>, the question before the Court was whether a pretrial order limiting press reporting violated the First Amendment. <u>Stuart</u>, 427 U.S. at 541. In discussing the trial court's alternatives to issuing such an order, the Court listed the option of "searching questioning of prospective jurors, as Mr. Chief Justice Marshall used in the Burr case, to screen out those with fixed opinions as to guilt or innocence." <u>Id.</u> at 564. The Court did not further define "searching questioning," but earlier in the opinion had stated that in the Burr case, "[f]ew people in the area of Virginia from which jurors were drawn had not formed some opinions concerning Mr. Burr or the case." <u>Id.</u> at 548. Because none of the members on Moore's jury panel acknowledged having pretrial knowledge of his case, <u>see</u> Trial Transcript, at 20, he has not established that "searching questioning" on the part of the trial court or defense counsel was needed to "screen out those with fixed opinions as to guilt or innocence." <u>See id.</u> at 564.

Moore next cites <u>Dennis v. United States</u>, 339 U.S. 162, 171-72 (1950), for the proposition that "Preservation of the right to prove actual bias is a guarantee of a defendant's right to an

impartial jury." Moore's Memorandum, at 16. <u>Dennis</u> dealt with the question of whether bias should be implied to disqualify Government employees as jurors in the defendant's trial for failure to appear before the Committee on Un-American Activities of the House of Representatives. <u>Dennis</u>, 339 U.S. at 164. This was one of a line of cases regarding such a disqualification, and in making the statement quoted by Moore, the Court was simply emphasizing that even though Congress has provided by law that government employment alone will not disqualify a juror from service, such a potential juror could be removed for cause if "actual bias" is shown. <u>See</u> <u>id.</u> at 171-71. The Court did not provide any guidance on how <u>voir</u> <u>dire</u> should be conducted to avoid such "actual bias," nor did the Court consider, in <u>Dennis</u>, the issue of pretrial publicity, which Moore asserts prevented his jury from being impartial.

Moore next cites <u>Morgan v. Illinois</u>, 504 U.S. 719, 730 (1992), for the proposition that "<u>[v]oir dire</u> plays a critical function in assuring the criminal defendant that his [constitutional] right to an impartial jury will be honored. Without an adequate <u>voir dire</u> the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled." Moore's Memorandum, at 16. <u>Morgan</u> dealt with whether the Constitution required the trial judge to allow defense counsel to inquire as to whether a potential juror would automatically impose the death penalty upon conviction

of a defendant. <u>Morgan</u>, 504 U.S. at 721. The Court answered in the affirmative because the imposition of the death penalty in such circumstances would result in the juror ignoring the trial court's instructions, and, therefore, deny the defendant his right to a fair trial. <u>See id.</u> at 738. <u>Morgan</u> was one in a line of cases regarding <u>voir dire</u> for a capital defendant, and the reasoning appears limited to such cases. <u>See id.</u> at 722. Because Moore was not charged with a capital crime, and <u>Morgan</u> did not address the effect of pretrial publicity on <u>voir dire</u>, <u>Morgan</u> does not provide any support for Moore's claim that defense counsel's failure to ask <u>voir dire</u> questions constituted ineffective assistance of counsel.

Moore next cites <u>Patton v. Yount</u>, 467 U.S. 1025, 1038 (1984), for the proposition that "[w]hen there has been unusual pretrial publicity in a criminal case, the Supreme Court has said that there must be 'fair support in the record for the state courts' conclusion that the jurors . . . would be impartial.'" Moore's Memorandum, at 17. In considering the pretrial publicity in that case, the Court stated:

> The publicity revealed Yount's prior conviction for murder, his confession, and his prior plea of temporary insanity, information not admitted into evidence at trial. The <u>voir dire</u> showed that all but 2 of 163 veniremen questioned about the case had heard of it, and that, 126, or 77%, admitted they would carry an opinion into the jury box. . . . Finally, the Court of Appeals found that 8 of the jurors and alternates actually seated admitted that at some time they had formed an opinion as to Yount's guilt.

26

<u>Patton</u>, 467 U.S. at 1029-30 (underlining added). The Court concluded, however, that the trial court "did not commit manifest error in finding that the jury as a whole was impartial," because there had been a passage of a year and a half since the reversal of the defendant's first trial, and in that time, the two (2) local papers had each only published, on average, one (1) article per month on the trial. <u>Id.</u> at 1032. The Court did not describe what would constitute "fair support in the record" for a finding of juror impartiality, <u>see id.</u> at 1039; however, because all of the jurors in Moore's case answered the question regarding pretrial knowledge of the case in the negative, there was not the same need for extensive follow-up questions to establish impartiality as there was in <u>Patton</u>. Consequently, Moore has not demonstrated that <u>Patton</u> required the defense counsel to conduct follow-up <u>voir dire</u> in response to the jurors' unanimous negative response.

Next, Moore cites <u>Silverthorne v. United States</u>, 400 F.2d 627, 638 (9th Cir. 1968), for the proposition that, "[I]n the absence of an examination designed to elicit answers which provide an <u>objective basis</u> for the court's evaluation, 'merely going though the form of obtaining jurors' assurances of impartiality is insufficient.'" Moore's Memorandum, at 17-18. In <u>Silverthorne</u>, the court found that

> Each and every juror in the case before us had read or hear <u>something</u> about appellant's case. The trial court made no effort to ascertain <u>what</u> information the jurors had accumulated

27

> and, consequently had no way of objectively
> assessing the impact caused by this pretrial
> knowledge on the juror's impartiality.

Silverthorne, 400 F.2d at 638.   The court then found that

"[b]ecause of the voluminous publicity[19] antedating appellant's

trial, some of which was prejudicial in nature, and in view of the

trial court's denial that any prejudice existed because of the

pretrial publicity, the court's voir dire examination should have

been directed to the individual jurors."   Id. at 639 (underlining

added).   Moore has not established the same "voluminous publicity"

described in Silverthorne, nor has he established that any of the

potential jurors had heard or read "something" about his case.   See

Trial Transcript, at 20.   Moore has also failed to provide facts

demonstrating that he was entitled to the additional individual

---

[19]The court described the publicity as encompassing:
> [A] bank failure of the proportion here
> present, the nature of the closing, the
> criminal charges filed against Silverthorne in
> the state courts, his testimony and the
> testimony of witnesses against him before the
> investigating committee of the Senate
> Committee on Governmental Operations, the
> indictment returned by the federal grand jury,
> Silverthorne's flamboyant and bizarre
> conduct[,] including his marital and gambling
> activities[,] with losses of almost one-half
> million dollars, the civil suit filed against
> him by the Federal Deposit Insurance
> Corporation predicated on Silverthorne's
> alleged malfeasance, and the resignation of
> Silverthorne's attorney and the latter's
> filing suit against him for unpaid attorney's
> fees.

Silverthorne, 400 F.2d at 631.

voir dire regarding pretrial publicity "prefer[red]" by the Ninth Circuit in Silverthorne.  See Silverthorne, 400 F.2d at 639.

The next two (2) cases cited by Moore, Turner v. Murray, 476 U.S. 28 (1986), and United States v. Dellinger, 472 F.2d 340 (7th Cir. 1972), held that a general question regarding the juror's ability to impartially render a verdict was insufficient to determine bias as to race or pretrial publicity, respectively. These cases are inapposite for Moore's claim because the trial judge in Moore's case did ask a specific question regarding pretrial publicity.  Trial Transcript, at 19-20.

In the next case cited by Moore, United States v. Davis, 583 F.2d 190, 197-98 (5th Cir. 1978), the Fifth Circuit found that voir dire was insufficient because the district judge acknowledged that all of the jurors must have been exposed to pretrial publicity, and then asked them, while composed as a group, to raise their hand if the publicity would impair their ability to render an impartial verdict.  Davis, 583 F.2d at 196.  The Fifth Circuit held that under such circumstances, the district judge was required to individually interview each panel member "to determine the extent, frequency, and harmfulness of the exposure."  Id.  Because the jurors in Moore's case denied exposure to pretrial publicity, there was no need for follow-up questioning on an individual basis.

In the last case cited by Moore in support of this claim, McDonough Power Equipment v. Greenwood, 464 U.S. 548, 554 (1984),

29

the Court found that a panel member's answer to a <u>voir dire</u> question based on an honest, but erroneous, understanding of that question, was not a basis for reversal on appeal.  This holding actually favors denying Moore's claim (3), which argues that additional <u>voir dire</u> was necessary to determine if any of the juror's were honestly mistaken in their denial of pretrial knowledge of the case.

In order to prevail on claim (3), Moore needed to provide authority establishing that following the juror's denial of pretrial knowledge of Moore's case, defense counsel was required to ask additional questions to confirm that denial.  Moore has only produced cases that address follow-up <u>voir dire</u> when the court has determined that pretrial publicity has been so pervasive the court could assume that the potential jurors knew something about the case.  The articles provided by Moore to demonstrate pretrial publicity do not meet this threshold of establishing pervasive pretrial publicity warranting individualized <u>voir dire</u>.

Based on the foregoing this Court FINDS that Moore has failed to show either that the Circuit Court unreasonably determined the facts or unreasonably applied federal law in dismissing claim (3).  As such, this Court RECOMMENDS that claim (3) be DENIED.

### 4.  <u>Claim (5)</u>

As claim (5), Moore asserts he was denied his right to effective assistance of counsel because defense counsel elected to

forego seeking a mistrial or the exclusion of testimony by Davis, the Commonwealth's witness, when defense counsel learned that the prosecutor had not provided allegedly-exculpatory impeachment evidence related to Davis.  Federal Petition, at 12a.  The basis for this claim appears to be that counsel, in lieu of seeking a mistrial or to exclude Davis' testimony, negotiated for a restriction on the use by the Commonwealth of the allegedly-inconsistent statements made by Davis (that contradicted certain aspects of an earlier statement Davis made to police on April 15, 2002, and which arguably inculpated Moore) and for the right to question the police detective further about the April 15 statement. The claim was considered on the merits by the Circuit Court, which held that "Counsel's decision not to ask for a mistrial or to have Davis's testimony excluded is presumed to be a matter of strategy that cannot be second-guessed by the habeas court."  Moore III, at 5.  Moore asserts, however, that defense counsel's decision cannot be characterized as trial strategy because counsel did not first request to review the exculpatory statements.  Moore's Memorandum, at 25.

As with Moore's other (2) two ineffective-assistance-of-counsel claims, supra, Moore has provided no cases that set forth a specific standard for what counsel must do when he discovers a Brady violation, but has provided only cases that show when a Brady

violation results in a due-process violation.[20]  The denial of that right would be evidence of prejudice, the second <u>Strickland</u> prong, but to establish constitutionally ineffective assistance of counsel, Moore would also have to establish that any such prejudice was caused by counsel's ineffectiveness.

Based on the record before the Court, the Court finds that defense counsel engaged in a trial strategy that was designed to question the credibility of the Commonwealth's witnesses, including Davis.  The agreement defense counsel stipulated to with the Commonwealth's Attorney, in exchange for not requesting a mistrial and/or persisting in his request to exclude Davis' testimony, was consistent with this strategy, contrary to Moore's assertions. Indeed, Moore's argument, that "[defense] counsel's election to forego obtaining a remedy for the clear <u>Brady</u> violations, made no tactical or strategic sense," Moore's Memorandum, at 25, is precisely the sort of "Monday morning quarterbacking" that a federal court should avoid upon habeas review.  <u>Stamper</u>, 944 F.2d at 178.  In negotiating to limit the Commonwealth's use of the allegedly-inconsistent statements made by Davis, and obtaining the right to further inquire into the April 15 statement, Moore's defense counsel did obtain a "remedy" for the alleged <u>Brady</u>

---

[20]Moore has asserted, as claim (4), that he was denied his Fourteenth Amendment right to due process due to the prosecutor's failure to disclose all pretrial inconsistent statements; however, the Court, having found that claim to be procedurally defaulted, <u>supra</u>, will not consider it on the merits.

violations.

Based on the foregoing, this Court FINDS that Moore has failed to show either that the Circuit Court unreasonably determined the facts or unreasonably applied federal law in dismissing claim (5). As such, this Court RECOMMENDS that claim (5) be DENIED.

## IV. **RECOMMENDATION**

For the foregoing reasons, the Court, having denied Moore's motion for an evidentiary hearing, and having found that claims (1) and (4) are procedurally defaulted pursuant to an independent-and-adequate state law, and that the remaining claims asserting ineffective assistance of counsel are without merit, recommends that Moore's petition for a writ of habeas corpus be DENIED, that Respondent's motion to dismiss be GRANTED, and that all of Moore's claims be DISMISSED.

Moore has failed to demonstrate "a substantial showing of the denial of a constitutional right." Therefore, it is recommended that the Court decline to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. See Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003).

## V. <u>REVIEW PROCEDURE</u>

By copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve upon the other party and file with the Clerk specific written objections to the foregoing findings and recommendations within ten (10) days from the date of mailing of this report to the objecting party, <u>see</u> 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e) of said rules.  A party may respond to another party's specific objections within ten (10) days after being served with a copy thereof.  <u>See</u> Fed. R. Civ. P. 72(b).

2. A district judge shall make a <u>de novo</u> determination of those portions of this report or specified findings or recommendations to which objection is made.  The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

_____
United States Magistrate Judge

Norfolk, Virginia
March 27, 2008

34